# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## 1:19-CV-321-CCE-JEP

| | |
|---|---|
| ADIAHA STRANGE, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| SELECT MANAGEMENT RESOURCES, LLC; ANDERSON FINANCIAL SERVICES, LLC; LOANMAX, LLC; LOANSMART, LLC; KIPLING FINANCIAL SERVICES, LLC; NORTH AMERICAN TITLE LOANS, LLC, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL ARBITRATIONS**

NOW COME Defendants, Select Management Resources, LLC ("Select"), Anderson Financial Services, LLC ("Anderson"), LoanMax, LLC ("Loan Max"), LoanSmart, LLC ("Loan Smart"), Kipling Financial Services, LLC ("Kiplin"), and North American Title Loans, LLC ("North American") (collectively, "Defendants") through their counsel, and respectfully ask this Court to either deny Plaintiffs' Motion to Compel Arbitration, in whole or in part, and/or stay the Motion pending the Court's determination of the issues expressly reserved for the Court in the parties' arbitration agreements.

## STATEMENT OF THE CASE

Plaintiffs have alleged in broad strokes that Defendants violated the North Carolina Consumer Protection Act by charging excessive interest rates on car title loans. Plaintiffs' Complaint acknowledges that Defendants are "foreign corporation[s] organized and existing under the laws of a state other than North Carolina" that do not maintain any offices in North Carolina. [Doc. #10, ¶¶2, 12] Plaintiffs claim that Defendants are liable under North Carolina law under N.C.G.S. § 53-190, which claims to apply the provisions of the Consumer Protection Act against out-of-state lenders.

In their Answer, Defendants asserted the affirmative defense of unconstitutionality and included a counterclaim for declaratory relief, asking this Court to declare that N.C.G.S. § 53-190, if applicable to Defendants, is an unconstitutional regulation of interstate commerce that violates the United States Constitution.

Plaintiffs now seek to compel arbitration of all claims and issues as to all Defendants, regardless of the express language of the agreements between the parties.

## STATEMENT OF FACTS

Each Plaintiff alleges that he or she entered into one or more loan agreements with one or more of the Defendants. [Doc. #10, ¶1] As explained

below, however, no Plaintiff alleges that they have any agreement with Select or Loan Max. Defendants Anderson, Kipling, Loan Smart and North American (the "Lender Defendants") are lawfully engaged in the business of motor vehicle title lending in Virginia or South Carolina. [Doc. #21, Counterclaim ¶3] Defendants Anderson, Kipling and Loan Smart are licensed motor vehicle title lenders in the Commonwealth of Virginia. [*Id.*] North American is a supervised lender in South Carolina. [*Id.*] Select is a limited liability company that does not engage in lending, but provides back-office support to Anderson, Kipling, Loan Smart and North American. [*Id.*] While both Anderson and North American do business under the name "Loan Max," Defendant Loan Max, LLC is a Delaware limited liability company that has no current operations. [*Id.*, fn 2]

None of the Defendants do business in North Carolina. [Doc. #21, Counterclaim ¶4] The four Lender Defendants do not offer loans or make loans over the phone or internet. [Doc. #21, Counterclaim ¶4] All of the activities leading up to the issuance of such loans occur in Virginia or South Carolina, respectively. No offers are made in North Carolina. No acceptances occur in North Carolina. No documents are signed in North Carolina. No funds are exchanged in North Carolina [Doc. #21, "Summary of Action"] North Carolina residents, including Plaintiffs, must be physically present at

3

a Lender Defendant's Virginia or South Carolina office to apply for and take out a loan. [Doc. #21, Counterclaim ¶4]

Plaintiffs' loan contracts are governed by either Virginia or South Carolina law, depending on the location of the Lender Defendant's office visited by the Plaintiff.[1] [Doc. #21, Counterclaim ¶5] The loans made by Anderson, Kipling and Loan Smart—the Lender Defendants located in Virginia—are lawful under Virginia law and are regulated by the Virginia Bureau of Financial Institutions pursuant to Virginia's Motor Vehicle Title Loans Statute, Va. Code §§ 6.2-2200 et seq. [Doc. #21, Counterclaim ¶3] The loans made by North American in South Carolina are permitted by South Carolina law. *See* S.C. Code Ann. § 37-3-201(2)(b); S.C. Code Ann. § 37-3-305. [Doc. #21, Counterclaim ¶2]

Every loan contract includes an arbitration provision (the "Arbitration Agreements"). Select and Loan Max are not lenders and are not signatories to any Arbitration Agreement. [*See* Doc. #33-1, Exhibits A-H] The Arbitration Agreements reserve for the Court's determination the scope of what is arbitrable under the Agreements. [Doc. #33-1, Exhibits A-H, Paragraph b] For the reasons set forth below, Plaintiffs' Motion to Compel Arbitration

---

[1] Defendants have searched their records and have voluntarily provided to Plaintiffs' counsel all relevant loan documents they have located. To the extent necessary for the Court to resolve this Motion, Defendants will provide copies of the loan agreements to the Court.

4

should be denied, in whole or in part, and/or stayed pending this Court's determination of the scope of what is arbitrable and other issues expressly reserved for the Court pursuant to Arbitration Agreements.

## ARGUMENT

### I. <u>Plaintiffs' Motion to Compel Should Be Denied as to All Plaintiffs and All Defendants.</u>

Plaintiffs claim that Defendants "have refused to refer all Plaintiffs' disputes to arbitration" based on their denial of Plaintiffs' allegation that "all matters before the Court should be referred to arbitration." [Doc. #33, p. 8] This is inaccurate. As discussed below, Defendants maintain that their affirmative defense and counterclaim regarding the unconstitutionality of N.C.G.S. § 53-190 are not arbitrable, but have not otherwise refused to arbitrate Plaintiffs' claims because Plaintiffs have not initiated any arbitration which could be refused.[2]

The Arbitration Agreements place the responsibility for initiating arbitration proceedings on Plaintiffs. [Doc. #33, Exhibits A-H, Paragraph c] That provision states that while Plaintiffs may give notice to Lender Defendants of their intent to arbitrate "by papers filed in the lawsuit," the

---

[2] Defendants also contend that several Plaintiffs' claims are barred by the applicable statute of limitations and prior releases signed by certain Plaintiffs.

5

burden of initiating the arbitration proceeding is on the Plaintiffs. Specifically, the Arbitration Agreements state:

> Regardless of who elected arbitration or how arbitration was elected, the party asserting the Claim (i.e., the party seeing monetary damages or other relief from a court or an arbitrator) is responsible for starting the arbitration proceeding. [*Id.*]

To Defendants' knowledge, Plaintiffs have not initiated any arbitration proceedings. Typically, a claimant who intends to be bound by an arbitration provision initiates the arbitration instead of filing a lawsuit. *See* 9 U.S.C. § 4 (setting out the right of parties to petition a federal court to compel arbitration <u>after</u> a written request for arbitration has been refused). Plaintiffs' filing of this lawsuit belies their assertion that the Arbitration Agreements are valid and enforceable.[3] It is unclear, therefore, whether Plaintiffs intend to initiate arbitration proceedings, as they have not fulfilled

---

[3] Indeed, in a similar case filed by Plaintiffs' counsel, *Leroy Floyd, Jr. v. Anderson Financial Services, LLC d/b/a MoneyMax Title Loans,* Civil Action No. 1:18-cv-306-CCE-JEP (M.D.N.C), counsel's client asked the Court to declare the same Arbitration Agreements at issue in this case "void and unenforceable as being both substantially and procedurally oppressive and unconscionable . . . ." *See also Latonya Boubacar v. Kipling Financial Services, LLC*, Civil Action No. 1:18-cv-309-CCE-JEP (M.D.N.C.); *Monica Latoi Gary v. Anderson Financial Services*, Civil Action No. 1:18-cv-305-CCE-JEP (M.D.N.C.); *Patricia Ann Williams v. Kipling Financial Services, LLC*, Civil Action No. 1:18-cv-307-CCE-JEP (M.D.N.C.); *Vincent Odell Hairston v. Anderson Financial Services, LLC*, Civil Action No. 1:18-cv-304-CCE-JEP (M.D.N.C.); *Kasheena Shade Parker v. Kipling Financial Services, LLC*, Civil Action No. 1:18-cv-308-CCE-JEP (M.D.N.C.).

their contractual obligation to do so. Unless and until Plaintiffs begin arbitration proceedings, this Motion is premature and should be denied as to all Plaintiffs and Defendants. *See, e.g.*, *Baumgart Holding Co. v. First American Corp.*, 2008 WL 2404748 (M.D. Fla. 2008) (denying motion to compel arbitration when there were outstanding factual questions outside the scope of the arbitration agreement); *Jackson v. Rite Way Services, Inc.*, 2007 WL 9712002 (N.D. Ala. 2007) (denying motion to compel arbitration when parties had not yet followed contractual requirement to mediate in advance).

Moreover, the Motion to Compel Arbitration should be denied as to Defendants Select and Loan Max because they are not signatories to the Arbitration Agreements. [*See* Doc. #33-1, Exhibits A-H] Plaintiffs ignore this fact in their Motion to Compel Arbitration and give no justification for why these two Defendants should be subjected to Arbitration Agreements they did not sign. Select and Loan Max respectfully request that this Court deny Plaintiffs' Motion on this separate and independent basis.

## II. The Motion to Compel Should be Denied as to Select and Loan Max.

The Motion to Compel Arbitration should be denied as to Defendants Select and Loan Max because they are not signatories to the Arbitration Agreements. [*See* Doc. #33-1, Exhibits A-H] Plaintiffs ignore this fact in their Motion to Compel Arbitration, and give no justification for why these

7

two Defendants should be subjected to Arbitration Agreements they did not sign. Plaintiffs acknowledge that it is their burden to show (among other things) "a written agreement that includes an arbitration provision which purports to cover the dispute." [Doc. #33, pp 5-6] Plaintiffs cannot meet this burden with respect to Select and Loan Max.

As a long-standing matter of law, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 80 S.Ct. 1347, 1353, 363 U.S. 574, 582 (1960); *see also Wilson v. Willis*, 827 S.E.2d 167, ___ (S.C.S.C. April 10, 2019) ("Moreover, because arbitration, while favored, exists solely by agreement of the parties, a presumption *against* arbitration arises where the party resisting arbitration is a nonsignatory to the written agreement to arbitrate."). As Plaintiffs' Exhibit I shows, each individual Plaintiff entered into one or more contracts with one individual Defendant. Neither Select nor Loan Max appear as a counterpart to any of those contracts. [*See* Doc. #33-1, Exhibits A-H] Plaintiffs bear the burden of establishing some ground for enforcing those Arbitration Agreements against the nonsignatories Select and Loan Max.

Plaintiffs have not articulated any theory under which Select and Loan Max could be held to a contract they did not sign. Plaintiffs' blanket

8

allegation that all Defendants are "related" and "operate as one enterprise" is simply insufficient to carry their burden. [Doc. #10, ¶3] Proving piercing the corporate veil under either Virginia or South Carolina law—the laws governing the various corporate Defendants—is a highly fact-intensive process. Plaintiffs have neither plead nor proven facts to establish their broad allegation, much less satisfy the detailed factual analysis necessary to force nonsignatories Select and Loan Max into arbitration. Plaintiffs' mere recitation in the Complaint of the elements some courts have considered to pierce the corporate veil do not meet Plaintiffs' burden. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Therefore, Select and Loan Max respectfully request that this Court deny Plaintiffs' Motion on this separate and independent basis.

### III. <u>The Motion to Compel Should be Denied as to Plaintiffs Armstrong, Ja'quisha Davis, Quinita Edwards, Angela Hall, Holeman, Jarrell, Johnson, Lawson, Tobias, Watters, and Weathers.</u>

Several of the Arbitration Agreements explicitly state that "[t]o the extent that any Claim or Defense to any Claim requires a determination under the United States Constitution (a "Constitutional Determination"),

9

such Constitutional Determination must be decided by a court, not an arbitrator." [Doc. #10, Exhibits B, D, F, H, Paragraph l]  That same provision also states that any arbitration proceeding will be stayed until the Constitutional Determination is "finally resolved by a court judgment." [*Id.*] Plaintiffs have not challenged the enforceability or validity of this provision, but acknowledge its existence in the Motion to Compel.  [Doc. #33, pg. 4 (describing Exhibit I as indicating "whether or not the arbitration provision contains the Constitutional provision, subparagraph '1'")]  Plaintiffs Baker, Blakely, Boyd, Dixon, Funderburk, Leak, McCaskill, and McNeil (the "Constitutional Determination Plaintiffs") are identified in Exhibit I to Plaintiffs' brief as having signed Arbitration Agreements containing this express language.

Defendants' Answer, Defenses, and Counterclaim included as a First Defense the claim that N.C.G.S. § 53-190 violates the Commerce Clause of the United States Constitution. [Doc. #21, First Defense]  Defendants' counterclaim seeks a declaratory judgment from this Court on this constitutional question. [Doc. #21, Counterclaim ¶¶11-12, *citing Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010), *cert denied*, 563 U.S. 928 (2010)] Based on the plain language of the Arbitration Agreements, Defendants' counterclaim is a "Constitutional Determination" that must be

10

resolved by this Court <u>before</u> any arbitration may take place. As noted above, Plaintiffs have not initiated any arbitration proceedings, so there are no proceedings to stay. Accordingly, the Constitutional Determination Plaintiffs' Motion to Compel Arbitration should be denied pending this Court's resolution of the issue of the constitutionality of the statute on which Plaintiffs' claims are based.

## IV. **Defendants' Constitutional Counterclaim Must Be Decided By This Court Before Any Arbitration Proceeds.**

Should the Court grant Plaintiffs' Motion as to any Plaintiff, arbitration proceedings as to those claims should be simultaneously stayed until this Court resolves Defendants' Counterclaim. As noted above, several Plaintiffs in this lawsuit expressly contracted to have any constitutional issues determined first by a court before proceeding in arbitration. For the reasons set forth below, the constitutionality of N.C.G.S. § 53-190 should be decided by this Court prior to arbitration by the remaining Plaintiffs as well.

In *Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund*, 718 F.2d 628 (4th Cir. 1983), the Fourth Circuit held that a facial challenge to the constitutionality of a statute was properly decided by the district court despite the arbitrability of other aspects of the dispute. The court reasoned that when there is a facial challenge to the statute animating the dispute between the parties, "arbitration could neither

11

moot the constitutional issues which are raised nor develop a factual context for their easy judicial resolution." *Id.* at 635 (citing *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290, 294 (3rd Cir. 1982)). Moreover, "the expertise of an arbitrator would not go to the constitutional issue and therefore '[a]rbitration would neither develop a better record for adjudication of the constitutional issues nor eliminate the need to consider the constitutional challenge.'" *Id.* (quoting *Shelter Framing Corporation v. Pension Benefit Guaranty Corporation*, 705 F.2d 1502 (9th Cir.1983)).

Numerous other circuit courts have held that facial constitutional challenges may be decided by the federal courts and need not be submitted to arbitration. *See, e.g.*, *Trustees of Colorado Pipe Industry Pension Trust v. Howard Elec. & Mechanical Inc.*, 909 F.2d 1379, 1386 (10th Cir.1990); *Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 852 F.2d 156, 164–165 (6th Cir.1988); *New York State Teamsters Conference Pension & Retirement Fund v. McNicholas Transp. Co.*, 848 F.2d 20, 22 (2nd Cir.1988). Although these cases were applying challenges to the arbitration provision of 29 U.S.C. § 1401, their reasoning holds true for other constitutional challenges as well.

Whether N.C.G.S. § 53-190 violates the Commerce Clause is a purely legal question, and if resolved in favor of Defendants would nullify Plaintiffs' claims. As a matter of judicial economy, this legal issue should be resolved by the Court, not by several hundred individual arbitrators in each arbitration proceeding. Plaintiffs' Complaint acknowledges that Lender Defendants are "foreign corporation[s] organized and existing under the laws of a state other than North Carolina." [Doc. #10, ¶2] Plaintiffs acknowledge that Lender Defendants' offices are not in North Carolina. [Doc. #10, ¶12] Plaintiffs have not alleged that Defendants' conduct or business practices violate the laws of the states in which the offices are located. Thus, the question of whether N.C.G.S. § 53-190 seeks to unconstitutionally regulate interstate commerce is appropriately before this Court.

Finally, each of the Arbitration Agreements referred to by Plaintiffs state that "any dispute or controversy about the validity, enforceability, coverage or scope" of the Arbitration Agreements "are for a court and not an arbitrator to decide." [Doc. #33, Exhibits A-H, Paragraph c] If Defendants are correct that N.C.G.S. § 53-190 is unconstitutional, then Plaintiffs' claims, which are based on that statute, are not arbitrable and are outside the scope of the Arbitration Agreements. An arbitrator cannot make this decision. "Arbitrators are not public officials … [t]hey cannot enter judgments that are

13

enforceable with a further legal proceedings. Their decisions carry no official imprimatur. They never hold statutes unconstitutional—indeed, they do not rule on questions of law at all. With rare exception, all that arbitrators do is interpret contracts." *Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037 (7th Cir. 1984).

The question of who decides the threshold issue of arbitrability "is itself a question of contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. ___ (2019) (holding that the court must respect the parties' decision "as embodied in the contract" to delegate the question of arbitrability to the arbitrator). Here, the parties have not delegated the determination of the scope of the Arbitration Agreement to the arbitrator, but have expressly reserved that determination for the Court. The Court, therefore, should stay further proceedings as to all Plaintiffs pending its determination of whether the claims are arbitrable, or nullified by the Court's ruling on the constitutionality of N.C.G.S. § 53-190.

## CONCLUSION

Defendants ask this Court to deny Plaintiffs' Motion to Compel Arbitration, or, in the alternative, to stay further proceedings until after a final judgment on Defendants' counterclaim has been entered.

Respectfully submitted this the 3rd day of June, 2019.

/s/ Catherine R. L. Lawson
Catherine R. L. Lawson
N.C. State Bar No. 44574
Catharine Biggs Arrowood
N.C. State Bar No. 6984
Melanie Black Dubis
N.C. State Bar No. 22027
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina 27601
Telephone: (919) 828-0564
Facsimile: (919) 834-4564
Email: catherinelawson@parkerpoe.com
melaniedubis@parkerpoe.com
cbarrowood@parkerpoe.com

*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing brief complies with the type-volume limitation provided in LR 7.3(d). The foregoing brief contain less than 3,000 words in Century Schoolbook (13-point) proportional type. The word processing software used to prepare this brief was Microsoft Office Word 2010.

/s/ Catherine R. L. Lawson
Catherine R. L. Lawson
N.C. State Bar No. 44574
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina 27601
Telephone: (919) 828-0564
Facsimile: (919) 834-4564
Email: catherinelawson@parkerpoe.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Defendants' Response to Plaintiffs' Motion to Compel Arbitrations was electronically filed with the Clerk of the Court by using the CM/ECF System which will automatically send notice of the filing to the following counsel:

> James Robert Faucher
> Benson, Brown & Faucher, PLLC
> 822 N. Elm St., Ste. 200
> Greensboro, NC 27401
> Email: jfaucher@bbflaw.com
> *Counsel for Plaintiffs*
>
> Scott F. Wyatt
> Donavan J. Hylarides
> Wyatt Early Harris Wheeler LLP
> 1912 Eastchester Drive, Suite 400
> High Point, NC 27265
> Email: swyatt@wehwlaw.com
>      dhylarides@wehwlaw.com
> *Counsel for Defendants*

This the 3rd day of June, 2019.

> /s/ Catherine R. L. Lawson
> Catherine R. L. Lawson
> N.C. State Bar No. 44574
> PARKER POE ADAMS & BERNSTEIN LLP
> 301 Fayetteville Street, Suite 1400
> Raleigh, North Carolina 27601
> Telephone: (919) 828-0564
> Facsimile: (919) 834-4564
> Email: catherinelawson@parkerpoe.com
>
> *Attorneys for Defendants*