IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ADIAHA STRANGE, et al.,        )
                               )
            Plaintiffs,        )
                               )
      v.                       )    1:19-CV-321
                               )
SELECT MANAGEMENT              )
RESOURCES, LLC, et al.,        )
                               )
            Defendants.

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Each plaintiff is a North Carolina resident who borrowed money at allegedly illegal interest rates from one of the out-of-state defendants. The plaintiffs ask the Court to compel arbitration of their predatory lending claims pursuant to arbitration provisions in the loan agreements. The written loan agreements contain arbitration provisions that purport to cover the dispute. The motion to compel arbitration will therefore be granted as to claims against those defendants who agreed to arbitration and denied as to defendant Select, who was not a party to the arbitration agreements.

## THE CLAIMS AND DEFENSES

The plaintiffs are North Carolina residents who allege that each borrowed money from one of the defendants Anderson Financial Services, LLC, LoanSmart, LLC, Kipling Financial Services, LLC, and North American Title Loans, LLC; that each loan was secured by the plaintiff's car title; and that the lending defendant charged an illegally high interest rate. *See generally* Doc. 10. They further allege that defendant Select

exercises complete dominion and control over the other defendants, such that it is appropriate to pierce the corporate veil and hold Select responsible for the acts of the lenders. Doc. 10 at ¶ 46. The plaintiffs seek to recover damages and penalties under the North Carolina Consumer Finance Act, N.C. Gen. Stat. § 53-164 *et seq.*, *id.* at ¶¶ 23–28; under N.C. Gen. Stat. § 24-1.1 *et seq.*, *id.* at ¶¶ 29–35; and under the North Carolina Unfair and Deceptive Trade Practices Act. N.C. Gen. Stat. § 75-1.1, *id.* at ¶¶ 36–41. They also seek attorneys' fees and punitive damages. *Id.* at ¶¶ 41–44.

Among other defenses, the defendants contend that the North Carolina Consumer Finance Act is unconstitutional as applied to them because all lending activities took place out of state and each is an out-of-state business. Doc. 21 at 11–12. Specifically, they contend it violates the Commerce Clause because it expressly applies to out-of-state commerce and has that practical effect. *See id.* The defendants have filed a counterclaim for a declaratory judgment on the same issue, contending that none has engaged in any contractual activities related to plaintiffs' loans in North Carolina and that to the extent the relevant provision of the Consumer Finance Act, N.C. Gen. Stat. § 53-190, applies because of defendants' other loan activities, it is unconstitutional. Doc. 21 at 13–18.[1]

The plaintiffs move to compel arbitration of all their claims pursuant to broad arbitration agreements made as part of the loan process. Doc. 1-1 at ¶¶ 59–61; Doc. 10 at ¶¶ 59–61; Doc. 32. In the main, the defendants contend that the plaintiffs have never

---

[1] In the Answer, the declaratory judgment counterclaim appears to be an as-applied challenge to the constitutionality of N.C. Gen. Stat. § 53-190, Doc. 21 at 17, though the defendants in their brief appear to contend they are making a facial challenge to the constitutionality of the statute. *See* Doc. 38 at 11–12 (relying on cases involving facial challenges to a statute).

appropriately initiated arbitration and that as to some plaintiffs, their constitutional defenses to the plaintiffs' claims are not covered by the arbitration agreement.  Doc. 38 at 5.  Two of the defendants, Select and LoanMax, also object to arbitration because no plaintiff alleges any agreement with them, and they are not signatories to any arbitration agreement.  *Id.* at 7–9.  As to LoanMax, the plaintiffs agree that dismissal without prejudice is appropriate.  Doc. 40 at 3–4.  The Court will dismiss those claims without prejudice without further discussion.

## DISCUSSION

Under the Federal Arbitration Act ("FAA"), on a party's motion and if the court concludes that a valid arbitration agreement covering the dispute at issue exists, it must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3.  A litigant can compel arbitration if he or she can prove:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).  It is undisputed that the first and third requirements have been met.  The defendants dispute the fourth requirement as to all plaintiffs and dispute the second only as to certain agreements.

There are two different arbitration agreements at issue.  Both agreements contain broad arbitration provisions that allow either the borrower or the lender to "elect to arbitrate a Claim," Doc. 33-1 at p. 2 ¶ c; Doc. 33-8 at p. 2 ¶ c, and that  define a "Claim,"

3

as is relevant here, as "any claim, dispute or controversy between [the borrower] and [the lender], whether preexisting, present or future, that in any way arises from or relates to the Loan Agreement." Doc. 33-1 at p. 2 ¶ b; Doc. 33-8 at p. 2 ¶ b. If that weren't clear enough, the agreements explicitly provide that the word "claim" "has the broadest reasonable meaning" and "includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity and claims for money damages and injunctive or declaratory relief." Doc. 33-1 at p. 2 ¶ b; Doc. 33-8 at p. 2 ¶ b. The agreements do exclude from arbitration "any dispute or controversy" about the "coverage or scope of this Arbitration Agreement" and provide that "all such disputes or controversies are for a court and not an arbitrator to decide." Doc. 33-1 at p. 2 ¶ b; Doc. 33-8 at p. 2 ¶ b.

Some of the plaintiffs have loan agreements with an additional provision directed towards "U.S. Constitutional Issues," which the Court will reference as the "constitutional provision." *See, e.g.*, Doc. 33-8 at p. 4 ¶ l. In full, this paragraph provides:

> l. **U.S. Constitutional Issues**: To the extent that any Claim or defense to any Claim requires a determination under the United States Constitution (a "Constitutional Determination"), such Constitutional Determination must be decided by a court, not an arbitrator. You and we agree that: (A) the arbitration of such Claim will be stayed until such Constitutional Determination is finally resolved by a court judgment that is not or is no longer subject to appeal; and (B) the arbitrator will render his or her award in accordance with such Constitutional Determination.

Doc. 33-8 at p. 4 ¶ l.

I.      **Have the Plaintiffs Elected Arbitration?**

The defendants contend that because no plaintiff has actually initiated an arbitration proceeding, the motion should be denied. Doc. 38 at 5–7. This contention is without merit, as both arbitration agreements specifically provide that either party may elect to arbitrate by filing a motion to compel arbitration of the Claim. Doc. 33-1 at p. 2 ¶ c; Doc. 33-8 at p. 2 ¶ c. This the plaintiffs have done by filing the pending motion. At the hearing on this motion, the plaintiffs stated their intention to promptly initiate arbitration proceedings once the motion is granted. *See generally* Docs. 33, 40. Should any plaintiff fail to initiate arbitration within a reasonable time, the defendants can move to lift the stay or make any other appropriate motion.

## II. Is Select Bound by the Arbitration Agreement?

It is undisputed that Select is not a signatory to any of the arbitration agreements. Generally speaking, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 626–27 (4th Cir. 2006),[2] but application of common law principles of contract and agency law may bind a non-signatory to an arbitration agreement. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416–17 (4th Cir. 2000). These include agency, veil piercing/alter ego, and estoppel. *Id.*

Select has admitted that it accepts payments on car title loans made by its lender co-defendants, Doc. 21 ¶¶ 47, 52, 54, 55, and it acknowledges that it is an "affiliated company" with the other defendants, for whom it provides "back-office support

---

[2] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

5

services." Doc. 21 at 13 n. 2. Select has also relied on an identical arbitration clause to the ones at issue here in at least one other case. Doc. 40-2 at pp. 4–7 ¶¶ 8–9. In that case, Select represented to the court that there were "no legal constraints that would foreclose" its rights to compel arbitration in that case. *Id.* at p. 8 ¶ 13.

This evidence is insufficient to meet the plaintiff's burden to show that Select should be bound by an arbitration agreement it did not sign.[3] Arbitration is "a matter of consent, not coercion," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989), and the plaintiffs have cited no case for the proposition that the mere fact of corporate affiliation is sufficient to establish agency or to pierce the corporate veil. Estoppel generally requires that a party actually rely on a contract's provisions before it is estopped from enforcing an arbitration provision in that contract, *see, e.g.*, *Wachovia Bank, Nat. Ass'n v Schmidt*, 445 F.3d 762, 769–70 (4th Cir. 2006), a situation that does not exist here. And it is not sufficient to establish estoppel to show that in one other lawsuit, Select was authorized to act for one of the lenders.

## III. Agreements without the constitutional provision

It is undisputed that as to the remaining defendants, the agreements that do not contain the constitutional provision are written agreements with an arbitration provision

---

[3] The plaintiffs cite no case to support the contention that Select should be bound by an arbitration agreement it did not sign. *See* Doc. 19 at ¶ 1 (Order reminding parties at beginning of case that "legal arguments require citation to legal authority"); *Hughes v. B/E Aerospace, Inc.*, No. 1:12CV717, 2014 WL 906220, at *1 n. 1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do."). The Court's preliminary research does not support the plaintiffs' argument. *See Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995) ("As a general matter . . . , a corporate relationship alone is not sufficient to bind a nonsignatory to an arbitration agreement."); *Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC*, 250 F. Supp. 3d 13, 26 (E.D. Va. 2017) (same).

covering the dispute. As to plaintiffs with those agreements, the motion to compel arbitration will be granted. This applies to all plaintiffs who have not settled their claims except plaintiffs Wherry, C. Blakely, E. Blakely, Leak, Eves, Wimbley, Baker, Enzlow, McNeil, McCaskill, Edwards, and Funderburk, as discussed *infra*. *See* Doc. 61-1 (indicating which agreements had the constitutional provision).

**IV.    Does the "constitutional provision" apply and if so, does it require a stay?**

Plaintiffs Wherry, C. Blakely, E. Blakely, Leak, Eves, Wimbley, Baker, Enzlow, McNeil, McCaskill, Edwards, and Funderburk entered into loan contracts containing arbitration agreements that contained the constitutional provision. *See* Doc. 61-1. The Court concludes the agreements are ambiguous. Courts resolve issues concerning the scope of arbitration agreements in favor of arbitration when they are ambiguous. Therefore, the Court will grant the motion to compel arbitration as to those plaintiffs whose arbitration agreements contain the constitutional provision.

The FAA establishes that, as a matter of federal law, "any doubts about the scope of arbitrable issues should be resolved in favor of arbitration," including when "the problem at hand is the construction of the contract language itself" or a "defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The presumption applies when "a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand . . . ." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019)

("[A]mbiguities about the scope of an arbitration agreement must be resolved in favor of arbitration.").

That is exactly the case here. The parties do not dispute there is a valid and enforceable arbitration agreement, *compare* Doc. 33 at 4–6, *with* Doc. 38 at 4–5; Doc. 21 at ¶ 60, but there is a dispute over whether the arbitration agreements with the constitutional provision cover the constitutional defense raised by the defendants.

When interpreting a contract, the primary focus is to effectuate the intention of the parties. *Va. Elec. & Power Co. v. Norfolk S. Ry. Co.*, 683 S.E.2d 517, 525 (Va. 2009); *Miles v. Miles*, 711 S.E.2d 880, 883 (S.C. 2011).[4] Whenever possible and when the terms are unambiguous, the contract should be construed according to its plain meaning. *TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 557 S.E.2d 199, 200 (Va. 2002); *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 649 S.E.2d 494, 501 (S.C. Ct. App. 2007). "Whether a contract is ambiguous is to be determined from the entire contract and not from isolated portions of the contract." *Farr v. Duke Power Co.*, 218 S.E.2d 431, 433 (S.C.

---

[4] "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*¸ 514 U.S. 938, 944 (1995); *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005). The arbitration agreements in question contain choice of law provisions. Some of those choice of law provisions stipulate the agreements are governed by South Carolina law, Doc. 33-8 at ¶ h, while others are governed by Virginia law, *see, e.g.*, Doc. 33-2 at ¶ h. Under the application of either law the analysis is identical. Plaintiffs argue that neither Virginia law or South Carolina law apply but have offered no basis as to why the state law specified in the choice of law provisions should not govern interpretation of the agreements. Doc. 57 at 1.

1975); *TM Delmarva Power*, 557 S.E.2d at 200. An agreement is ambiguous if it is susceptible to "more than one reasonable construction." *Clinch Valley Physicians, Inc. v. Garcia*, 414 S.E.2d 599, 601 (Va. 1992); *Miles*, 711 S.E.2d at 883.

Here, the agreements contain provisions that conflict with one another, and the contract is thus susceptible to more than one reasonable interpretation. As noted *supra*, the parties agreed to the constitutional provision that explicitly removes from arbitration "any . . . defense to any Claim requir[ing] a determination under the United States Constitution." Doc. 33-8 at p. 4 ¶ l. On the other hand, in that same agreement, in a different paragraph, the parties explicitly agreed to include as arbitrable any "dispute" that is "based upon . . . [the/a] constitution." *Id.* at p. 2 ¶ b. The defendants' Commerce Clause defense and declaratory judgment counterclaim are "dispute[s]" that are "based upon" a constitution. Thus, the arbitration agreement contains directly contradictory and inconsistent terms.

These terms are susceptible to more than one reasonable interpretation. On the one hand, the defendants contend the constitutional provision is a specific "carve-out" of the general definition of a Claim. Doc. 56 at 3. Under this reading, the constitutional provision at paragraph "l" should control, the defendant's counterclaim is not subject to arbitration, and arbitration should be stayed pending its resolution by the Court. However, the plaintiffs offer an equally reasonable interpretation of the agreement. They assert, and the Court agrees, that paragraph

9

"b" explicitly includes federal constitution claims and, therefore, paragraph "b" and the constitutional provision conflict with each other—one calling for arbitration, the other calling for a court determination of the same issue. Doc. 40 at 5–7. Even if the Court did not agree with this reading, it would still be reasonable.

Therefore, the contract is ambiguous. *See First S. Bank v. Bank of the Ozarks*, 542 F. App'x 280, 282–83 (4th Cir. 2013) (summarizing South Carolina law as providing that a "contract may be ambiguous because of indefiniteness of expression, internal inconsistency, or inclusion of words that have a double meaning"); *Lion Assocs., LLC v. Swiftships Shipbuilders, LLC*, 475 F. App'x 496, 501 (4th Cir. 2012) (applying Virginia law and noting that ambiguity may arise when a contract "may be understood in more than one way"). Arbitration provisions that are ambiguous in their coverage are construed in favor of arbitration. *Lamps Plus, Inc.*, 139 S. Ct. at 1418.

The defendants contend that the arbitration exclusion in the constitutional provision is more specific and should govern over what they characterize as the more general provisions governing breadth of the arbitration agreement. Doc. 56 at 3–6. But both provisions are quite specific. One specifically agrees to arbitrate defenses based on the constitution and the other specifically excludes federal constitutional questions from arbitration. Both provisions purport to establish when a "Claim" is subject to arbitration. While "constitution" is less definite than "United States Constitution," "constitution" is not a general word. There are a

10

finite number of documents that can reasonably be construed as a "constitution," especially considering the few states where the defendants purport to do business.

The authorities cited by the defendants are distinguishable and inapplicable here.[5] Those are more typical cases where a broad, seemingly contradictory general provision yields to a more specific one, or where a general term is more precisely defined in another provision. Here, however, there are two explicit and specific provisions that conflict.

The defendants also argue that their constitutional counterclaim must be decided by the Court before any arbitration proceeds. Doc. 38 at 11. However, the cases they rely upon do not support this contention and are distinguishable from the case at hand in key ways.

---

[5] For example, the defendants cite *Appalachian Regional Healthcare v. Cunningham*, 806 S.E.2d 380 (Va. 2017), to support their argument that specific terms in a contract govern over general terms. Doc. 56 at 4. However, in *Appalachian Regional*, a specific definition of a term defined in the contract was held to limit general language that included the defined term. 806 S.E.2d at 385 n.9. If anything, the opposite is true here. The constitutional provision uses the specifically defined term "Claim," which includes "disputes based upon . . . [the/a] constitution." Doc. 33-8 at ¶ b. Regardless, this is not a case where a general provision or term gives way to one that is more specific. *See also Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 709 S.E.2d 163, 170 (Va. 2011) (finding a general provision claiming that extrinsic documents governed an agreement did not control over specific provisions within the agreement).

Defendants also cite to cases rejecting the implied repeal of statutes by the enactment of allegedly contradictory statutes. *See Capco of Summerville, Inc. v. J.H. Gayle Constr. Co., Inc.*, 628 S.E.2d 38, 41–42 (S.C. 2006) (declining to find a statute of limitation applying generally to contribution actions implicitly repealed a statute of repose that applied to specific contribution actions); *State v. Taub*, 519 S.E.2d 797, 801 (S.C. Ct. App. 1999) (applying specific criminal trafficking statute and recognizing repeal by implication is disfavored). These cases involve more than what is at issue in contract interpretation and are not controlling on this matter.

First, the cases relied upon by the defendants all arose from facial constitutional challenges to the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381, *et seq.* (the "MPPAA"). *See* Doc. 38 at 11–12. "The MPPAA was enacted by Congress . . . to safeguard the growth and viability of multiemployer pension plans by preventing an employer from withdrawing from such a plan and leaving it without funds to pay vested pensions." *New York State Teamsters Conference Pension & Retirement Fund v. McNicholas Transp. Co.*, 848 F.2d 20, 22 (2d Cir. 1988). Section 1401 of the MPPAA provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under [the MPPAA] shall be resolved through arbitration." 29 U.S.C. § 1401(a).

The cases relied upon by defendants, therefore, involved situations where the duty to arbitrate was created by Congress and did not arise out of an agreement to arbitrate between the parties, as here. Moreover, the arbitration provisions of the MPPAA were "limited to disputes involving a determination . . . of the establishment, computation and collection of withdrawal liability," and did not extend to issues about the constitutionality of the statute. *Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund*, 718 F.2d 628, 635 (4th Cir. 1983). The FAA does not have such a limited scope, and here the arbitration agreements do cover "disputes based upon" the Constitution.

For these reasons, the Court will grant the motion to compel arbitration of disputes where the loan agreement contains the constitutional provision.

## CONCLUSION

The plaintiffs have established that they are entitled to compel arbitration. The arbitration agreements allow the plaintiffs to commence arbitration through the filing of this action; those contracts without the constitutional provision contain an agreement to arbitrate that covers the dispute at issue; and for those plaintiffs with a constitutional provision in their contracts, the contracts are ambiguous as to the scope of the arbitration provision, and that ambiguity is resolved in favor of arbitration.

The plaintiffs have not demonstrated that arbitration can be compelled against Select, as Select was not a signatory to the arbitration agreements and the plaintiffs have not identified any theory that might bind Select to the arbitration agreement. Discovery and motions practice may proceed on the issues related to Select's liability for the acts of the defendants, so trial can be promptly conducted on Select's derivative liability if the plaintiffs prevail in arbitration.

It is **ORDERED** that:

1. The plaintiffs' motion to stay and to compel arbitration, Doc. 32, is **GRANTED** as to defendants Anderson Financial Services, LLC, LoanSmart, LLC, Kipling Financial Services, LLC, and North American Title Loans, LLC, and **DENIED** as to defendant Select Management Resources, LLC.

2. As to defendants Anderson Financial Services, LLC, LoanSmart, LLC, Kipling Financial Services, LLC, and North American Title Loans, LLC, the case is **STAYED** pending further order of the Court. Absent a request or motion from

any party to the contrary, the Court will assume the claims have been resolved completely by October 31, 2020, at which time the claims will be dismissed with prejudice.

3. Discovery and motions practice as to the claims against Select Management Resources, LLC based on the alter ego and piercing the corporate veil claim can proceed. The parties should discuss consolidation of this case with related cases—*Phillips*, 19cv325; *Nicholson*, 19cv519; *Archie*, 19cv575; *Green*, 19cv670; and *Cannon*, 19cv823—for purposes of discovery, motions practice, and trial if needed.

4. All claims against defendant LoanMax LLC are **DISMISSED** without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

This the 17th day of October, 2019.

_____
UNITED STATES DISTRICT JUDGE