IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ADIAHA STRANGE, et al | 1:19-CV-321 |
| AISHA PHILLIPS, et al | 1:19-CV-325 |
| ADRIAN NICHOLSON, et al | 1:19-CV-519 |
| AMELIA GREEN, et al | 1:19-CV-670 |
| ASIA ARCHIE, et al | 1:19-CV-575 |
| ALEXIS CANNON, et al | 1:19-CV-823 |
| Plaintiff, | **REPLY BRIEF IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT** |
| v. | |
| SELECT MANAGEMENT RESOURCES, LLC, et al | |
| Defendants. | |

Plaintiff Kenneth McNeil, pursuant to LR 7.2, submits this reply in support of his motion to confirm arbitration award and enter judgment and in opposition to LoanMax's motion to vacate.

## ARGUMENT

Anderson Financial Services, LLC's ("LoanMax") motion to vacate has no merit. The arbitrator did not manifestly disregard the law when he declined to declare N.C. Gen. Stat. § 53-190 unconstitutional or when he applied North Carolina statutory law notwithstanding a choice of law provision. LoanMax made its Commerce Clause and choice of law arguments to the arbitrator and they were rejected. The Arbitrator received

detailed briefing (attached as Exhibits A, B and C) and held an evidentiary hearing before entering the Award.

## I. Standard for Vacating Arbitration Award.

*Astanza Design, LLC v. Giemme Stile, S.P.A.*, 220 F.Supp.3d 641 (M.D.N.C. 2016) states the high standard to vacate an award:

> The Fourth Circuit has recently reiterated that the scope of judicial review of an arbitration award "is among the narrowest known at law." *UBS Fin. Servs., Inc. v. Padussis*, 842 F.3d 336, 2016 WL 6871906, at *2 (4th Cir. 2016)…***The court's duty is "to determine whether the arbitrators did the job they were told to do – not whether they did it well, or correctly, or reasonably, but simply whether they did it."*** Id. (quoting *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007)). In determining whether the arbitrators acted within their authority, the court is permitted, therefore, to determine whether the arbitrators "exceeded their powers," 9 U.S.C. § 10(a)(4), and in pursuing this inquiry may decide whether the parties agreed to arbitrate a particular dispute. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986). ***However, "[a]n arbitration award is enforceable even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion, and may only be reversed when arbitrators understand and correctly state the law but proceed to disregard the same.***" *Upshur Coals Corp. v. United Mine Workers of Am., Dist.* 31, 933 F.2d 225, 229 (4th Cir. 1991) (citations omitted). Apart from these fundamental questions of arbitrability, courts must defer to the arbitrators as to the merits of a dispute and any procedural questions arising from them, even if they bear on the final result. UBS Fin., 2016 WL 6871906, at *3. To do otherwise "would frustrate the purpose of having arbitration at all." Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 193 (4th Cir. 1998). The Supreme Court has said that a party seeking relief under § 10(a)(4) of the FAA bears "a heavy burden." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013).

> "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." Id. (citations omitted).

*Id.* at 645. (emphasis added).

## II. The Arbitrator did not manifestly disregard the law when he rejected LoanMax's dormant Commerce Clause Defense.

LoanMax's contention that the application of the dormant Commerce Clause is not in dispute is without merit.[1] First, because the arbitrator found that contractual activity discussions occurred in North Carolina the transaction is not wholly extraterritorial and the dormant Commerce Clause does not apply. Not only did the Arbitrator not "manifestly disregard the law" with regard to the dormant Commerce Clause, a de novo review (which is not before this Court) would reveal that he was correct in rejecting this defense in arbitration. The constitutional grant of authority to Congress to regulate interstate commerce is understood to provide "protection from state legislation inimical to the national commerce even where Congress has not acted." *Barclays Bank, PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298, 114 S. Ct. 2268, 129 L. Ed. 2d 244 (1994). This negative command, known as the

---

[1] LoanMax made the opposite argument argument to the arbitrator, claiming that the Commerce Clause issues "involve unique questions of law" as part of its argument that attorneys fees should not be awarded. (Ex. B p. 18) LoanMax now argues that those unique issues were so settled that the Award should be vacated. LoanMax should not be permitted to reargue the case here.

dormant Commerce Clause, prohibits States from legislating in ways that impede the flow of interstate commerce. *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.,* 514 U.S. 175, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995). This "principle against extraterritoriality" is born of the notion that "a State may not regulate commerce occurring wholly outside of its borders." *Healy v, Beer Inst.*, 491 U.S. 324, 109 S. Ct. 2491, 105 L. Ed. 2d 275 (1989)(emphasis added). In determining whether a state statute violates the dormant Commerce Clause, the courts conduct a two-tiered analysis. *Environmental Technology Council v. Sierra Club*, 98 F.3d 774 (4th Cir. 1996). When a state statute directly regulates or discriminates against interstate commerce, or when the effect is to favor in-state economic interests over out-of-state interests, the statute is generally struck down without further inquiry. *Brown-Foreman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 106 S.Ct. 2080, 90 L. Ed. 2d 552 (1986.) LoanMax cannot claim that N.C.G.S. §53-190 directly regulates the interest rates it may charge in states other than North Carolina. Rather, N.C.G.S. §53-190 governs LoanMax's loans only when it chooses to enter into the State of North Carolina for the purpose of engaging in conduct and activities that further its lending business — a finding which has been made by this Arbitrator. Furthermore, N.C.G.S. §53-190 does not discriminate in favor of North Carolina car title

loan lenders and against LoanMax. Domestic lenders are not permitted to charge higher rates of interest than LoanMax.

For the second step, LoanMax surely cannot argue that North Carolina does not have a legitimate interest in protecting its citizens from predatory lending practices. It is the well-settled law of this state that the North Carolina usury statutes were enacted to protect North Carolina consumers, a purpose that is "squarely within this State's ability to shelter its people ... from fraud." *See State v. Western Sky Fin.*, LLC, 2015 NCBC 84 (2015) In *Western Sky*, the North Carolina Business Court, citing *Aldens, Inc. v. Packel*, 524 F.2d 38 (3rd Cir. 1975), observed that "Congress has deferred to the states on the matter of maximum interest rates in consumer credit transactions." The Business Court further observed that "courts throughout the United States have consistently allowed states to regulate the content of loan contracts made by out-of-state lenders to resident borrowers." *Western Sky*, citing *State of Minn. V. CashCall, Inc.*, No. 27-CV-12740 (Minn. Dist. Ct. Sept 6, 2013).

The North Carolina Business Court in *Western Sky* considered and rejected a defense challenge that the North Carolina Usury Statute, N.C.G.S. §24-1.1, and the North Carolina Consumer Finance Act, N.C.G.S. §53-164, et seq., violated the dormant Commerce Clause. In rejecting that challenge the

Business Court held that "[t]he statutes at issue do not attempt to regulate conduct beyond North Carolina's borders and do not unduly burden interstate commerce." The Court further observed that "[t]he statutes do not purport to dictate the interest rates or other lending practices that Defendants apply in any state other than North Carolina." The Court concluded, after engaging in a balancing analysis pursuant to *Brown-Foreman*, that "the State's application of the relevant statutes to the loans at issue does not violate the dormant Commerce Clause." It is inarguable that the longstanding and well-settled right of the State of North Carolina to protect its citizens from predatory lending practices far outweighs whatever incidental impacts its laws may have on interstate commerce.

In this arbitration proceeding LoanMax relied heavily on a Seventh Circuit opinion - *Midwest Title Loans v. Mills* - for its argument that the applicable North Carolina laws are unconstitutional. This argument fails for several reasons. First, Midwest Title Loans is distinguishable on its facts. Midwest Title Loans addresses the authority of the State of Indiana to force a title lender to register to conduct business in Indiana. The same is true of the new Delaware District Court opinion where a state is a party. It does not address, and expressly distinguishes, the question of whether Indiana law would apply to a consumer loan transaction with a Hoosier in an Indiana

Court. The Court observed:

> Midwest has yet to sue any of its title borrowers. But if there were a suit, an Indiana court might rule that Indiana had the "most intimate contacts" with the transaction and therefore that its law applied even though the loan had been made in Illinois. Or it might rule that Illinois's failure to limit the interest rates in title loans was so offensive to the public policy of Indiana that the Illinois law would not be enforced in Indiana – in which event the Indiana courts might refuse to apply Illinois law even if Midwest's contracts contained a choice of law clause directing that Illinois govern a suit arising from the contract – which they do. In short, a particular set of facts giving rise to litigation [can] justify, constitutionally [that is, under the due process clause] the application of more than one jurisdiction's laws.

*Midwest Title Loans v. Mills*, 593 F.3d 600, 668 (internal citations omitted) And, again, the North Carolina Business Court expressly addressed this issue in its post-Midwest Title Loans decision and rejected the argument that LoanMax now makes. The North Carolina Business Court opinion is more persuasive, because it: (a) addresses the factual and legal issues here - whether North Carolina law may permissibly apply to consumer loans with North Carolina residents when some contractual activities take place in North Carolina; and (b) deals directly with the North Carolina consumer protection statutes at issue, rather than an Indiana registration requirement.

The Arbitrator correctly determined that he should not declare the statute at issue to be unconstitutional. Moreover, and what is certain, is that such a determination is not a "manifest disregard" of law or "industrial

justice." As such, this Court should reject the effort of LoanMax to have the award set aside.

On this precise issue, a Delaware appellate court reversed a lower court's decision to vacate nearly identical awards in response to the same arguments LoanMax makes here. *Auto Equity Loans of Delaware, LLC v. Baird, et al.* (No. N18A-08-001-DCS, Superior Court of Delaware, September 20, 2019) (copy attached as Exhibit D). Further, numerous other awards have been entered against other title lenders, highlighting that the legal issues that LoanMax claims are indisputable, are not. (Collected awards attached as Exhibit E).

**III. The Arbitrator's rejection of the Choice of Law provision in the contract is not a basis to vacate the award.**

Next, LoanMax argues that it is "eminently clear" that choice of law provisions are enforceable. However, the courts of North Carolina have long rejected choice of law provisions that violate a fundamental public policy of the state. Indeed, all reported legal authorities in the jurisdiction are counter to LoanMax's position - the North Carolina Consumer Finance Act applies regardless of a choice of law provision in the loan agreement. The North Carolina Business Court in *State v. Western Sky Fin., LLC*, 2015 NCBC 84 (2015) makes clear that "[t]he North Carolina Supreme Court has held that a contract made in a foreign state or country with the intent and propose to

avoid the usury laws of this State is invalid and the interest laws of North Carolina are applicable." *Id.* at ¶37 (quoting *Bundy v. Comm. Credit Co.*, 200 N.C. 511, 517-18 (1931)). The Business Court further recognized that North Carolina courts do not enforce choice of law provisions where the chosen law "would violate a fundamental policy of [North Carolina] of otherwise applicable law." *Id.* at ¶39. (citing *Behr v. Behr,* 46 N.C. App. 694, 696 (1980)). The choice of law provision, which LoanMax included in a loan agreement that was signed *after* LoanMax had engaged in conduct that triggered North Carolina law, does not apply. To say that the opposite is "eminently clear" is just not correct.

**IV. The Court Should Award Plaintiff Attorneys' Fees for Time Spent Enforcing the Award.**

Both the North Carolina's Revised Uniform Arbitration Act, N.C. Gen. Stat. § 1-569.25(c) and the court's inherent authority allow for an award of attorneys' fees. *See International Chemical Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.,* 774 F.2d 43, 47 (2d Cir. 1985) ("As applied to suits for the confirmation and enforcement of arbitration awards, the guiding principle has been stated as follows: 'when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded.'" (citation omitted)).

Judge Schroeder's recent opinion also addresses this attorneys' fees

issue:

> Because this action is before the court on the basis of diversity jurisdiction, the court must apply the substantive law of the forum *State. Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The right to an award of attorneys' fees is considered a matter of substantive law. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975); *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 213 (S.D.N.Y. 2006). North Carolina General Statute § 1-569.25(c) applies to agreements made after January 1, 2004, and provides in relevant part that a court may award reasonable attorneys' fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award. This provision therefore vests the court with discretion to award attorneys' fees to Astanza associated with the present proceeding unless it is otherwise preempted by the FAA. The exercise of State authority in a field traditionally occupied by State law will not be deemed preempted by a federal statute absent the clear manifestation of Congress. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157 (1978). Even where a federal statute does displace State authority, it rarely occupies a legal field completely, totally excluding all participation by the legal systems of the states . . . Federal legislation, on the whole, has been conceived and drafted on an ad hoc basis to accomplish limited objectives. It builds upon legal relationships established by the states, altering or supplanting them only so far as necessary for the special purpose. *Southland Corp. v. Keating*, 465 U.S. 1, 18 (1984) (quoting P. BATOR ET AL., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 470–71 (2d ed. 1973)). "The limited objective of the Federal Arbitration Act was to abrogate the general common law rule against specific enforcement of arbitration agreements." *Southland Corp.*, 465 U.S. at 18; see S. REP. NO. 68-536 at 2–3 (1924). Beyond this purpose, there is no clear intent to displace State authority. *Southland Corp.*, 465 U.S. at 18…(F)ederal courts have found it consistent with the purpose of the FAA to award attorneys' fees for litigation commenced to confirm or vacate an arbitration award under the FAA, even under their inherent powers. See,

> e.g., *Bell Prod. Eng'rs Ass'n v. Bell Helicopter Textron, Div. of Textron, Inc.*, 688 F.2d 997, 999-1000 (5th Cir. 1982); see also *Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. United Farm Tools, Inc., Speedy Mfg. Div.*, 762 F.2d 76, 77 (8th Cir. 1985) (per curiam) (holding that an unjustified refusal to abide by an arbitrator's award may constitute bad faith for the purpose of awarding attorneys' fees); *Com. Refrigeration, Inc. v. Layton Const. Co.*, 319 F. Supp. 2d 1267, 1271 (D. Utah 2004) (awarding attorneys' fees while noting that "[w]hile losing an arbitration may be unpleasant . . . the experience is not significantly improved by the instigation of a doomed — and no doubt costly — legal action"). A court may award attorneys' fees "when a party opposing confirmation of [an] arbitration award 'refuses to abide by an arbitrator's decision without justification.'" *The N.Y.C. Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc.*, No. 03 Civ. 5122, 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003) (quoting Int'l Chem. Workers Union, 774 F.2d at 47.)). Here, the court need not determine whether Defendants' opposition to the arbitration award was "unjustified." Section 1 express allowance for an award of attorneys' fees to Astanza in connection with its efforts to confirm the arbitration award and oppose Defendants' motion to vacate, modify, or correct the award are consistent with the purposes of the FAA and should be given effect. The statute expressly authorizes an award of reasonable attorneys' fees to the "prevailing party." The Uniform Law Comment provided with the statute notes that the provision is designed to "promote[] the statutory policy of finality of arbitration awards" by allowing recovery of expenses and fees to the prevailing party in contested judicial actions precisely like the present and thereby to discourage "all but the most meritorious challenges of arbitration awards." N.C. Gen. Stat. § 1-569.25(c) cmt. 3;10 see also Aetna Health of the Carolinas, 212 N.C. App. 419, 713 S.E.2d 792, at *6 (affirming trial court order confirming arbitration award and attorneys' fee award based on "prevailing party" status under § 1-569.25(c)).

*Astanza Design* 220 F. Supp. 3d at 652-53. The Court should award Plaintiff attorneys' fees. A Declaration in support thereof is attached as Exhibit F.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order confirming the Final Award, entering judgment against Anderson Financial Services, LLC and awarding Plaintiff attorneys' fees for time spent enforcing the Arbitration Award.

This the 19th day of May, 2021.

/s/James R. Faucher
James R. Faucher
N.C. State Bar No. 31514
Brown, Faucher, Peraldo & Benson, PLLC
822 N. Elm St., Suite 200
Greensboro, NC 27401
Telephone: 336.478.6000
Fax: 336.273.5597
Email:james@greensborolawcenter.com

*Attorney for Plaintiff Kenneth McNeil*

## CERTIFICATE OF COMPLIANCE WITH LR 7.3

The undersigned certifies that this brief complies with the word count limitations set forth in LR 7.3.

This the 19th day of May

/s/James R. Faucher
James R. Faucher
N.C. State Bar No. 31514
Brown, Faucher, Peraldo & Benson, PLLC
822 N. Elm St., Suite 200
Greensboro, NC 27401
Telephone: 336.478.6000
Fax: 336.273.5597
Email:james@greensborolawcenter.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned counsel of record for Plaintiffs certifies that the foregoing was filed with the Court and served on the parties via filing with the Court's CM/ECF system which will send notice of the filing to all counsel

of record.

Respectfully submitted, this the 19th day of May, 2021.

/s/James R. Faucher
James R. Faucher
N.C. State Bar No. 31514
Brown, Faucher, Peraldo & Benson, PLLC
822 N. Elm St., Suite 200
Greensboro, NC 27401
Telephone: 336.478.6000
Fax: 336.273.5597
Email:james@greensborolawcenter.com

*Attorney for Plaintiffs*