IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ADIAHAH STRANGE, et al. | ) | 1:19-CV-321 |
| AISHA PHILLIPS, et al. | ) | 1:19-CV-325 |
| ADRIAN NICHOLSON, et al. | ) | 1:19-CV-519 |
| AMELIA GREEN, et al. | ) | 1:19-CV-670 |
| ASIA ARCHIE, et al. | ) | 1:19-CV-575 |
| ALEXIS CANNON, et al., | ) | 1:19-CV-823 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SELECT MANAGEMENT | ) | |
| RESOURCES, LLC, et al., | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER- KENNETH McNEIL

Catherine C. Eagles, District Judge.

The plaintiff, Kenneth McNeil, is a North Carolina resident who borrowed money from the defendant, Anderson Financial Services LLC, d/b/a LoanMax, at an interest rate illegal in North Carolina. He is one of many plaintiffs in these consolidated cases to file suit under North Carolina consumer protection statutes. LoanMax contends that the loan was made in Virginia, where the interest rate was legal, that these North Carolina statutes do not apply, and that if they do, such application is unconstitutional. An arbitrator disagreed with LoanMax, and LoanMax has not shown the kind of error required to set aside an arbitration award. Mr. McNeil's motion to confirm the award will be granted.

### I. Procedural Background

In February 2019, the plaintiffs, North Carolina residents who borrowed money from out-of-state lenders, filed this lawsuit against their respective lenders in state court.

The plaintiffs alleged that the defendants charged illegal interest rates in violation of the North Carolina Consumer Finance Act, the North Carolina Unfair and Deceptive Trade Practices Act, and N.C. Gen Stat § 24-1.1. *See* Doc. 62 at 2 (summarizing the claims).

After removing the case to this Court, the defendants by counterclaim asked for a declaratory judgment that the North Carolina Consumer Finance Act violates the dormant Commerce Clause. *See* Doc. 8 at 11–12. The plaintiffs moved to compel arbitration pursuant to arbitration clauses the defendant-lenders included in the loan agreements. Doc. 32; *see also* Doc. 33-2. In October 2019, the Court granted the plaintiffs' motion to stay and to compel arbitrations as to all but one defendant. Doc. 62 at 13. The Court did not rule on the constitutional issue raised by LoanMax. *See id.* at 11–12. The matters have since been moving through individual arbitrations.

In April 2021, an arbitrator issued its final award in favor of Mr. McNeil. *See* Doc. 121-1. Mr. McNeil filed a motion for judgment and to confirm the arbitration award. Doc. 120. LoanMax filed a motion to vacate the arbitration award. Doc. 123. Mr. McNeil also seeks attorneys' fees for his time spent obtaining the order to enforce the award. Doc. 126 at 9.

## II. Overview of the Dispute

The basic facts are undisputed. Mr. McNeil and LoanMax entered into a contract whereby LoanMax lent money to Mr. McNeil and Mr. McNeil agreed to repay the money with interest. The contract provided that Virginia law would apply. Mr. McNeil has not repaid the loan.

2

The interest rate LoanMax charged Mr. McNeil and other plaintiffs was illegal under North Carolina law and legal under Virginia law. The dispute has centered on whether Mr. McNeil is entitled to the benefit of North Carolina statutory protections prohibiting usurious loans like the one here and, if he is, whether application of those statutes is unconstitutional.

### III. The Arbitration Award

After a hearing, the arbitrator found that Mr. McNeil was entitled to the protections in the North Carolina Consumer Finance Act because, "at the very least, contractual activity discussions occurred between McNeil and LoanMax in North Carolina" before the parties executed the loan agreement. *See* Doc. 121-1 at 2. The arbitrator concluded based on this finding that the statute was constitutional as applied to the loan agreement between LoanMax and Mr. McNeil. *Id.* The arbitrator also found that the agreement was void because its terms violated the North Carolina Consumer Finance Act. *See id.* As a result, the arbitrator struck LoanMax's lien on Mr. McNeil's vehicle and ordered that LoanMax "shall not collect, receive, or retain any principal or charges whatsoever with respect to the loan.". *Id.*

The arbitrator did not award damages and denied Mr. McNeil's request for attorneys' fees under the North Carolina Unfair and Deceptive Trade Practices Act. *Id.* (noting that the fees are discretionary and that Mr. McNeil had not established the facts necessary for the award). The arbitrator denied LoanMax's counterclaims for a declaratory judgment that its "loan activities with respect to McNeil's claims do not subject the loan to" various North Carolina consumer protection statutes, or in the

3

alternative, that the North Carolina statutes are unconstitutional as applied, and for breach of contract based on Mr. McNeil's failure to pay back the loan. *Id.* at 1–2. The final arbitration award did not mention the choice-of-law provision. *See generally id.*

## IV. Should the Arbitration Award be Confirmed or Vacated?

### A. Judicial Review of Arbitration Awards

Under the Federal Arbitration Act, a party seeking confirmation of an arbitration award may petition the court for an order confirming the award within one year of the date the award is made. 9 U.S.C. § 9; *see also Taylor v. Nelson*, 788 F.2d 220, 225 n.2 (4th Cir. 1986). "Judicial review of an arbitration award in federal court is severely circumscribed." *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 478 (4th Cir. 2012) (cleaned up). "Indeed, given that 'full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation,' a court's review of an arbitration award 'is among the narrowest known at law.'" *Slavin v. Imperial Parking (U.S.), LLC*, No. CV PWG-16-2511, 2017 WL 2629044, at *6 (D. Md. June 19, 2017) (cleaned up).

A court must grant a motion to confirm an arbitration award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The party opposing the award bears the burden of proving the existence of grounds for vacating the award. *Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 443 (4th Cir. 2020). A court may vacate an arbitration award only for the reasons specified in the Federal Arbitration Act, *see* 9 U.S.C. § 10(a), or upon a showing of limited common law grounds. *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006).

4

The Fourth Circuit has recognized two common-law grounds: "those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." *Id.*[1] "The manifest disregard standard is not an invitation to review the merits of the underlying arbitration . . . or to establish that the arbitrator misconstrued or misinterpreted the applicable law." *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015) (cleaned up).

### A. The Constitutional Question

First, LoanMax contends that the Court must vacate the arbitration award because the arbitrator manifestly disregarded well-settled principles of constitutional law. *See* Doc. 122 at 4–9. But LoanMax ignores that the arbitrator's resolution of the constitutional issue turned on his factual determination that contractual activities took place in North Carolina.

As is relevant here, the North Carolina Consumer Finance Act provides that "[n]o loan contract made outside this State" that violates specified North Carolina usury laws "shall be enforced in this State." N.C. Gen. Stat. § 53-190(a). But there is an exception. By its terms the statute does "not apply to loan contracts in which all contractual activities, including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds, occur entirely outside North Carolina." *Id.* The arbitrator found that the exception did not apply because "at the very least,

---

[1] At oral argument, Mr. McNeil contended that common law exceptions cannot apply here because the terms of the arbitration agreement provide for "judicial review only as provided under the FAA." Doc. 33-2 at p. 3, ¶ 11(j). The Court need not decide this issue, which was not raised in the briefs, given its resolution of the other issues raised.

contractual activity discussions occurred between McNeil and LoanMax in North Carolina." Doc. 121-1 at 2.[2]

This is a factual finding, and an "arbitrator's factual findings are accorded great deference." *See CACI Premier Tech., Inc. v. Faraci*, 464 F. Supp. 2d 527, 535 n.5 (E.D. Va. 2006). This issue was presented to the arbitrator and LoanMax did not prevail. Even if the arbitrator made a mistake of fact, which is not at all clear, such a mistake "provides insufficient grounds for the modification of an award." *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998).

LoanMax also disagrees with the arbitrator's decision that the statute is constitutional as applied to the loan agreement between LoanMax and Mr. McNeil. *See Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 209 (2d Cir. 2003) ("Whether a statute discriminates impermissibly against interstate commerce is a mixed question of law and fact . . . ."). Just as with mistakes of fact, however, a "misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award." *Apex Plumbing*, 142 F.3d at 194.

A party seeking to vacate an arbitration award for manifest disregard must show that: "(1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Dancel*, 792 F.3d at

---

[2] While not explicit in the award, the arbitrator was presumably referring to a phone call between the parties; it is undisputed that Mr. McNeil called LoanMax from North Carolina and discussed obtaining a loan before he drove to the LoanMax office in Virginia. Doc. 126-1 at 2; Doc. 126-2 at 2–3.

6

402. As the cases cited in the briefs make clear, there is a good deal of debate about the exact scope and application of the dormant Commerce Clause to statutes like the ones enacted by North Carolina. Given the arbitrator's factual finding that contractual activity occurred in North Carolina, it cannot be said that the arbitrator refused to apply a clearly defined legal principle that is not subject to reasonable debate.

To the extent LoanMax contends that the Court must make a *de novo* decision as to whether the dormant Commerce Clause precludes enforcement of Mr. McNeil's statutory rights, the Court rejects that argument. First, LoanMax has not cited any legal authority holding that judicial review of arbitration awards is broader when the claim or defense is based on the Constitution. And second, as the drafter of the choice-of-law provision, LoanMax could have unambiguously excluded federal constitutional questions from arbitration. It did not do so. *See* Doc. 62 at 7–12.

### B. The Contractual Issue

LoanMax next contends that the Court should vacate the arbitration award because the "arbitrator's inexplicable refusal to apply the choice-of-law provision was a manifest disregard of the law." Doc. 122 at 10. LoanMax assumes the arbitrator "disregarded" the provision because he did not mention it in the award. *Id.* But "arbitrators are not required to explain their reasoning." *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award."); *Wachovia Sec.*, 671 F.3d at 481.

Here, "justifiable ground[s] for the decision can be inferred from the record." *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 97 (2d Cir. 2008), *rev'd on*

7

*other grounds*, 559 U.S. 662 (2010). Indeed, there are several reasons the arbitrator could have found that the choice-of-law provision was not determinative of Mr. McNeil's claims. For example, Mr. McNeil's claims were for violations of North Carolina statutes, not for breach of contract; the arbitrator had to deal with the claims as pled. And not all choice-of-law provisions cover extra-contractual statutory claims. *See Run Them Sweet, LLC v. CPA Glob. Ltd.*, 224 F. Supp. 3d 462, 466 (E.D. Va. 2016). There is also a strong argument that choice-of-law provisions that allow lenders to avoid North Carolina usury laws violate public policy. *See State ex rel. Cooper v. W. Sky Fin., LLC*, No. 13 CVS 16487, 2015 WL 5091229, at *10 (N.C. Super. Ct. Aug. 27, 2015). North Carolina will not enforce a choice-of-law provision that "violate[s] a fundamental policy of the state." *Behr v. Behr*, 46 N.C. App. 694, 696, 266 S.E.2d 393, 395 (1980).

**C. The Award will be Confirmed**

The role of federal courts in this context is "not to determine the merits of the dispute between the parties but rather to determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *Interactive Brokers*, 969 F.3d at 445 (cleaned up). Indeed, the scope of judicial review of an arbitration award "is among the narrowest known at law." *UBS Fin. Servs., Inc. v. Padussis*, 842 F.3d 336, 339 (4th Cir. 2016) (cleaned up).

Here, the record shows that the arbitrator performed his job; after considering all the evidence, he applied the law as he understood it and there was no manifest disregard of the law. LoanMax assumed "the risk that the arbitrator may interpret the law in a way with which they disagree" when it included the arbitration clause in its loan agreement

8

with Mr. McNeil. *Wachovia Sec.*, 671 F.3d at 478 n.5; *see also Trademark Remodeling, Inc. v. Rhines,* No. PWG-11-1733, 2012 WL 3239916, at *10 (D. Md. Aug. 6, 2012). The Court will confirm the award and enter judgment in favor of Mr. McNeil.

## V. Should the Court Award Attorneys' Fees to the Plaintiff?

The "FAA does not authorize a district court to award attorneys' fees to a party who successfully confirmed an arbitration award in federal court," but it "does not displace State law allowing for such awards." *Astanza Design, LLC v. Giemme Stile, S.p.A.*, 220 F. Supp. 3d 641, 652 (M.D.N.C. 2016). As is relevant here, the North Carolina Revised Uniform Arbitration Act provides that a "court may award reasonable attorneys' fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming . . . an award." N.C. Gen. Stat. § 1–569.25(c).

The statute gives courts discretion, but it does not impose any requirement related to the strength or weakness of the losing party's argument. *See, e.g., Astanza Design,* 220 F. Supp. 3d at 653. The Uniform Law Comment provided with the statute notes that the provision is designed to "promote[] the statutory policy of finality of arbitration awards" by allowing the prevailing party in contested judicial actions precisely like the present to recover expenses and fees, thereby discouraging "all but the most meritorious challenges of arbitration awards." N.C. Gen. Stat. § 1–569.25(c) cmt. 3. The statute is consistent with the purposes of the FAA—to promote arbitration and the avoidance of the expense and delay associated with litigation—and it should generally be given effect. *Astanza Design*, 220 F. Supp. 3d at 653. No facts here strongly support denial of an

9

attorneys' fee. Mr. McNeil is the prevailing party and an award covering his attorneys' fees incurred to respond to LoanMax's motion to vacate is appropriate on the facts here.

Based on the evidence of record, *see* Doc. 126-6, as supplemented at the hearing on June 17, 2021, the Court finds as a fact that counsel for Mr. McNeil spent a reasonable amount of time to respond to the motion to vacate and to prepare and attend the hearing; it was reasonable for all three attorneys significantly involved in these cases to attend the hearing; the hourly rates for Mr. Faucher, Mr. Brown, and Mr. Peraldo are reasonable; and a reasonable fee, calculated for 14 hours at $350 an hour, is $4,900. The Court will award attorneys' fees in that amount, in its discretion.

It is **ORDERED** that:

1. Plaintiff Kenneth McNeil's motion to confirm arbitration award and enter judgment, Doc. 120, is **GRANTED**.

2. Defendant Anderson Financial Services, LLC d/b/a LoanMax shall pay Plaintiff Kenneth McNeil's reasonable attorneys' fees of $4,900 incurred to defend against the motion to vacate the arbitration award.

3. Defendant Anderson Financial Services, LLC d/b/a LoanMax's motion to vacate the arbitration award and enter judgment against Plaintiff Kenneth McNeil, Doc. 123, is **DENIED**.

4. Judgment will be entered separately.

This the 28th day of June, 2021.

UNITED STATES DISTRICT JUDGE